**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | | |
|---|---|---|
| LYNN ZELVIN, on behalf of himself and<br>all others similarly situated, | : | Civil Case No.: 1:23-cv-08022-JGLC |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| H HERITAGE, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

<u>Pages</u>

I.    PRELIMINARY STATEMENT……………………………………………1

II.   STATEMENT OF FACTS…………………………………………… 1

III.  LEGAL STANDARDS………………………………………… 6

       a.   Standard of Review on a Rule 12(b)(1) Motion to Dismiss…………...6

       b.   Standard of Review on a Rule 12(b)(2) Motion to Dismiss…………...6

IV.   ARGUMENT…………………………………………………………… 7

  A.  BECAUSE PLAINTIFF HAS ALLEGED A CONSTITUTIONAL BASIS FOR
     THE REQUISITE STANDING, THE COURT DOES NOT LACK SUBJECT
     MATTER JURISDICTION…………………………………………7

     i.   The Amended Complaint Sufficiently Alleges That Plaintiff Suffered a
       Concrete Injury……………………………………………………7

  B.  THIS COURT HAS THE REQUISITE PERSONAL JURISDICTION OVER
     DEFENDANT……………………………………………………15

     i.   Defendant "Transacts Business" with New York Residents………………15

     ii.  Plaintiff's Claim Arises from Defendant's Transaction of Business in New
       York…………………………………………………………...18

     iii. Personal Jurisdiction Over Defendant Comports with Due Process……….19

     iv.  If the Court Is Not Inclined to Exercise Personal Jurisdiction, It Should
       Permit Limited Jurisdictional Discovery into Defendant's New York Contacts
       to Avoid Undue Prejudice……………………………………………….20

  C.  CONCLUSION………………………………………...……...………………… 24

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*ACCESS 4 ALL, INC. V. G & T CONSULTING CO., LLC*,
2008 U.S. DIST. LEXIS 30594 (S.D.N.Y. MAR. 28, 2008)................................. 11

*Adams v. 46 N LLC*,
2023 U.S. Dist. LEXIS 29696 (SDNY Feb. 22, 2023) ..................................... 12

*Alcon Labs., Inc. v. Allied Vision Grp., Inc.*,
2018 U.S. Dist. LEXIS 219632 (E.D.N.Y. Dec. 22, 2018) ................................. 6

*Angeles v. Grace Prods. Inc.*,
2021 U.S. Dist. LEXIS 182317 (S.D.N.Y. Sept. 23, 2021) ................................. 8

*Antoninetti v Chipotle Mexican Grill, Inc.*,
643 F3d 1165 (9th Cir 2010) ………………………………...………………………… 14

*Astor Chocolate Corp. v. Elite Gold Ltd.*,
2020 U.S. Dist. LEXIS 78862 (S.D.N.Y. May 5, 2020) ..................................... 21

*Best Van Lines, Inc. v. Walker*,
490 F.3d 239 (2d Cir. 2007) ……………………………….………………….…..… 16

*Calcano v. Swarovski N. America Ltd.*,
36 F.4th 68 (2d Cir. 2022) ………………………………………………………… 9, 10, 11

*Camacho v. Vanderbilt Univ.*,
2019 U.S. Dist. LEXIS 209202 (S.D.N.Y. Dec. 4, 2019) ................................. 9, 14

*Chalas v. Barlean's Organic Oils, LLC*,
2022 U.S. Dist. LEXIS 211816 (S.D.N.Y. Nov. 22, 2022) ................................. 11

*Chavez v. L2 Liu*,
2021 U.S. Dist. LEXIS 37700 (E.D.N.Y. Feb. 26, 2021) ……………………....… 13

*City Bank Farmers' Trust Co. v. United States*,
5 F. Supp. 871, 873 (S.D.N.Y. 1934) ………………………………....……..… 13

*D'Lil v. Best W. Encina Lodge & Suites,*
538 F.3d 1031 (9th Cir. 2008) ………………………………………………………… 14

*Davis v. Wild Friends Foods, Inc.*,
2023 U.S. Dist. LEXIS 115542 (S.D.N.Y. July 5, 2023) …………………………… 11,12,13,15

*Delacruz v. Ruby Tuesday, Inc.*,
2020 U.S. Dist. LEXIS 163969 (S.D.N.Y. Sept. 8, 2020) …………………………… 12

*DORCHESTER FIN. SEC, INC. V. BANCO BRJ, S.A.*,
722 F.3d 81 (2d Cir. 2013) ………………………………………………………….6

*FaZe Clan, Inc. v. Tenney*,
2019 U.S. Dist. LEXIS 189617 (S.D.N.Y. Oct. 31, 2019) …………………………… 6

*GERTSKIS V. EEOC,*
594 F. APP'X 719 (2D CIR. 2014) ………………………………………………… 6,7

*GREGORY V. DALY,*
243 F.3D 687 (2D CIR. 2001) ……………………………………………………… 6

*Golisano v. Turek,*
2015 U.S. Dist. LEXIS 11787 (W.D.N.Y. Feb. 2, 2015) …………………………… ..21

*Guerrero v Ogawa USA Inc.*,
2023 U.S. Dist. LEXIS 109579 (S.D.N.Y. June 26, 2023) …………………………… 12

*Guglielmo v. JEGS Auto., Inc.*,
2021 U.S. Dist. LEXIS 50347 (S.D.N.Y. Mar. 17, 2021) …………………………… 16,21,22,23

*Ikeda v. J Sisters 57, Inc.*,
2015 U.S. Dist. LEXIS 87783 (S.D.N.Y. July 6, 2015) ………………………….. 21

*JOHN V. WHOLE FOODS MKT. GROUP, INC.,*
858 F3D 732 (2D CIR 2017) ………………………………………………...……… 7

*Kreisler v. Second Ave. Diner Corp.*,
731 F.3d 184 (2d Cir. 2013) ………………………………………...…………… 13

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
732 F.3d 161 (2d Cir. 2013) …………………………………….………………… 6

*Lin Kwok Keung v Patisseries Saines Corp.*,
2023 US Dist. LEXIS 120258 (S.D.N.Y. July 12, 2023) …………………………… 12

*Loadholt v. Herb and Arts Intergalactic, Inc.*,
2023 U.S. Dist. LEXIS 59116 (S.D.N.Y. Apr. 4, 2023) ……………………………… 16, 17, 20

*Loadholt v ShirtSpace*,
2023 U.S. Dist. LEXIS 36924 (S.D.N.Y. Mar. 6, 2023) …………………………… 7, 9

Lᴜᴊᴀɴ ᴠ. Dᴇғs. ᴏғ Wɪʟᴅʟɪғᴇ,
504 U.S. 555 (1992) …………………………………………………………………… 7

Mᴀᴋᴀʀᴏᴠᴀ ᴠ. Uɴɪᴛᴇᴅ Sᴛᴀᴛᴇs,
201 F.3ᴅ 110 (2ᴅ Cɪʀ. 2000) …………………………………………………..……… 6

*Mattel, Inc. v. www.fisher-price.online*,
2022 U.S. Dist. LEXIS 127132 (S.D.N.Y. July 18, 2022) …………………………… 15, 16, 19

*Quezada v. U.S. Wings, Inc.*,
2021 U.S. Dist. LEXIS 234057 (S.D.N.Y. Dec. 7, 2021) …………………………… 16, 18

*Pension Committee of University of Montreal Pension Plan v. Banc of America Securities, LLC*,
2006 U.S. Dist. LEXIS 11617 (S.D.N.Y.2006) …………….………………………… 21

*Romero v. 88 Acres Foods, Inc.*,
580 F. Supp. 3d 9 (S.D.N.Y. 2022) …………………….…………………………… 17, 18, 19

*Sanchez v. NutCo, Inc.*,
2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022) ………………………..…9

*Thompson v. Equifax Info. Servs. LLC*,
2022 U.S. Dist. LEXIS 32935 (E.D.N.Y. Feb. 24, 2022) …………………………… 7

*Triestman v. Fed. Bureau of Prisons*,
470 F.3d 471 (2d Cir. 2006) ………………………………………………..……..… 6

*United States v. Esquivel*,
88 F.3d 722 (9th Cir. 1996) ………………………………..………………..……… 13

*Vasquez v. H.K. & Shanghai Banking Corp.*,
2019 U.S. Dist. LEXIS 120622 (S.D.N.Y. July 19, 2019) …………………………… 20

*Victoria Cruises, Inc. v. Yangtze Cruises, Inc.*,
630 F.Supp.2d 255 (E.D.N.Y. 2008) ………………………………………………… 13

*WowWee Grp. Ltd v. Meirly*,
2019 U.S. Dist. LEXIS 51905 (S.D.N.Y. Mar. 27, 2019) ………………………… 19

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................. 5, 7, 8, 11

Fed. R. Civ. P. 12(b)(2) ................................................................. 6, 15, 18

N.Y.C.P.L.R. § 302(a)(1). .............................................. 15, 16, 17, 19, 20

Plaintiff LYNN ZELVIN ("Plaintiff") respectfully submits this memorandum of law in opposition to H HERITAGE, INC.'s ("Defendant") motion to dismiss and supporting documents ("Motion to Dismiss").[1]

## I.    **PRELIMINARY STATEMENT**

The Amended Complaint properly pleads all of the necessary elements for the relief sought and this Court has subject matter jurisdiction over Plaintiff's viable and well-pled claims. Despite defense counsel's Duty of Candor to this Court, Defendant's attempt at arguing otherwise conveniently ignores numerous decisions in this district (even those post the Second Circuit's *Calcano* decision) that demonstrate the Amended Complaint has sufficiently pled a basis for subject matter jurisdiction.

Likewise for Defendant's arguments against personal jurisdiction. The Amended Complaint has pled sufficient grounds for this Court's exercise of personal jurisdiction over Defendant, as supported by caselaw in this district. At the very least, should the Court for some reason not find sufficient grounds for personal jurisdiction at this point, Plaintiff should be entitled to conduct limited jurisdictional discovery to fill the gaps that Plaintiff does not (and cannot) know concerning Defendant's business activities in the State of New York.

## II.    **STATEMENT OF FACTS**

As alleged in the Amended Complaint, Defendant is a retail company that owns and operates the website Holtzleather.com (the "Website"), through which it offers consumers the ability to browse and purchase wallets, bags, briefcases, clutches, belts, cufflinks, valets, bracelets,

---

[1] As used in this motion, the term "Amended Complaint" refers to the First Amended Complaint filed in this action on February 9, 2024 (ECF No. 12), and "Def. Mem." refers to Defendant's Memorandum of Law in Support of Its Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 14) filed on February 22, 2024.

candles, and home goods for home delivery.  Amended Complaint at ¶¶ 18, 25-26; *see also* Def. Mem. at p. 4-5. Defendant uses its Website to conduct business throughout the United States, including in New York State. Amended Complaint at ¶¶ 13-14, 17, 24. Importantly, Defendant does not deny that it conducts or conducted business with consumers in the State of New York through its Website. *See generally*, Def. Mem.

The Amended Complaint further alleges as follows: Plaintiff is a visually impaired and legally blind person who requires the use of screen-reading software in order to properly utilize his computer to access the internet.  Amended Complaint at ¶ 2.  Plaintiff was in the market to buy a new, high-quality leather wallet, and therefore searched for a "men's leather front pocket wallet" on Google and found Defendant's Website. Amended Complaint at ¶ 10. Plaintiff visited Defendant's Website, and decided to purchase a specific product, *i.e.,* the Gates Personalized Leather Bifold Money Clip Front Pocket Wallet (the "Intended Wallet"). Amended Complaint at ¶ 10.  Although Defendant's physical operation is located in Alabama, Defendant's Website is listed as the *seventh* website result when searching for "men's leather front pocket wallet" on Google, even when the computer on which the search is being performed is connected to a server located in New York. *See* Declaration of Mars Khaimov dated March 28, 2024 and annexed as **Exhibit A** to this Memorandum (the "Khaimov Declaration") at ¶ 2.

As of the date on which the Amended Complaint was filed, Plaintiff had made numerous attempts to complete a purchase on the Website, first on August 30, 2023, then again August 31, 2023, and most recently on December 19, 2023, but was unable to do so because of the many access barriers on Defendant's Website.  Amended Complaint at ¶ 36.  The Amended Complaint explicitly delineates the numerous access barriers that Plaintiff encountered on the Website with

accompanying images (all of which are explicitly incorporated herein by reference), which include, without limitation, the following (collectively, the "Access Barriers"):

a.  "Skip to content" link was not implemented correctly, and thus, Plaintiff was not provided with the mechanism to bypass repeated blocks of content;

b.  Landmarks were not properly inserted into the home page; Plaintiff tried to navigate the home page using landmarks but could not access its main regions because of landmark inaccurate markup;

c.  Multiple heading level 1 tags per page confused the outline of content, which is not beneficial for screen reader users; Plaintiff, using keyboard shortcuts, struggled to identify the main section due to repetitive h1 tags;

d.  Plaintiff tried to follow links from the Website and received no prior warning that the links opened new windows, and, as a result, Plaintiff unsuccessfully tried to use the "Back" function of the browser to go to the previous page and became disoriented;

e.  The website had device-specific functionality, like mouse-dependency, making it inaccessible to legally blind users, as sub-menu elements with drop-down menus were inaccessible via keyboard, therefore, Plaintiff could not interact with sub-menus using "tab" or "arrow" keys;

f.  The navigation sub-menus with drop-down lists did not announce their state (*i.e.,* "collapsed" or "expanded"), accordingly, Plaintiff could not determine in which part of the submenu the keyboard focus was located or if the links were skipped;

g.  Plaintiff could not access elements on the Website because it was improperly constructed: the "a" tag was used without the "href" tag; accordingly, Plaintiff did not receive full

3

access to all of the elements on the Website and did not know what element was missing;

h.    Image of text was used instead of real text, and no alternative description of the image was presented, accordingly, Plaintiff was deprived of the visually rendered information that was available to sighted customers;

i.    The carousel region of the Website did not comply with necessary accessibility standards, accordingly, Plaintiff could not control the moving content on the home page;

j.    Plaintiff encountered hidden elements which were not announced by the screen reader; Plaintiff tabbed through interactive elements but due to the fact that they were not voiced by the assistive technology, Plaintiff was unaware what elements were skipped;

k.    Plaintiff encountered repetitive link texts that were announced separately from their context, and these links did not provide helpful information and disoriented Plaintiff;

l.    Plaintiff was not aware of the search suggestions after the key term was entered into the search bar, as the status update about search suggestions was not provided even though the search suggestions were displayed;

m.    Plaintiff was forced to repeatedly tab through elements with the same destination: the link text of products conveyed similar information and led to the same destinations as interactive images above the links;

n.    Images on the Website did not have alternative text, and Plaintiff did not receive any description of the non-text content; and

o.    Unclear and ambiguous labels for form fields impeded Plaintiff from correct information input, as a result, Plaintiff was unaware of the purpose of the interactive element and could not understand what information was required.

4

Amended Complaint at ¶ 32(a)-(o).

The Website's inaccessible design deprives Plaintiff and other blind customers the opportunity to make purchases on the Website on their own; thus, the Access Barriers deny Plaintiff full and equal access, who would otherwise use the Website and who would otherwise be able to fully and equally enjoy the benefits and services of the Website.  Amended Complaint at ¶¶ 32, 34-35.  Because of the Access Barriers, Plaintiff and other blind customers must spend time, energy, and/or money to make their purchases at traditional brick-and mortar retailers. Amended Complaint at ¶ 34. While Plaintiff made numerous attempts to complete a purchase on the Website, the Access Barriers prevented Plaintiff from purchasing items on the Website.  Amended Complaint at ¶ 36.

Plaintiff has stated his continued intent to visit the Website again to buy the Intended Wallet immediately upon Defendant's correction of the numerous accessibility barriers on the Website. Amended Complaint at ¶ 37.  As clearly alleged in the Amended Complaint, Plaintiff is interested in purchasing the Intended Wallet for several reasons, including: (i) the Intended Wallet is a high-quality leather wallet that Plaintiff can put in his front pants or jeans pocket, which minimizes the risk of the wallet being stolen; and (ii) the Intended Wallet can be purchased with a customized engraving, which would make identifying the wallet by touch easier for Plaintiff, given his visual impairment. Amended Complaint at ¶ 37.

Based on this, the Amended Complaint adequately alleges (i) Defendant's violations of 42 U.S.C. § 12181 *et seq*. –Title III of the ADA (First Cause of Action); (ii) Defendant's violations the New York State Human Rights Law, N.Y. Exec. Law Article 15 (the "NYSHRL") (Second Cause of Action); (iii) Defendant's violations of Article 4 of the New York State Civil Rights Law (the "NYSCRL") (Third Cause of Action); and (iv) Defendant's Violations of the New York City

Human Rights Law, N.Y.C. Admin. Code § 8-101, *et seq.* (the "NYCHRL") (Fourth Cause of Action).  Additionally, the Complaint seeks Declaratory Relief related to such violations (Fifth Cause of Action).

### III.    LEGAL STANDARD

First and foremost, the Second Circuit cautions district courts from hastily dismissing complaints of civil rights violations.  *See Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001).

#### a.    Standard of Review on a Rule 12(b)(1) Motion to Dismiss

In reviewing a motion to dismiss under Rule 12(b)(1), a court must "accept all factual allegations as true, and draw all reasonable inferences in favor of the plaintiff."  *Gertskis v. EEOC*, 594 F. App'x 719, 721 (2d Cir. 2014) (*citing Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).  Granting dismissal under Rule 12(b)(1) is appropriate only "when the district court lacks the statutory or constitutional power to adjudicate it."  *Id.* (*citing Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

#### b.    Standard of Review on a Rule 12(b)(2) Motion to Dismiss

In order to defeat a Fed. R. Civ. Pro. 12(b)(2) motion to dismiss, a plaintiff must demonstrate a *prima facie* showing of personal jurisdiction over a defendant. *See FaZe Clan, Inc. v. Tenney*, 2019 U.S. Dist. LEXIS 189617, at *10 (S.D.N.Y. Oct. 31, 2019) (*citing Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013)).  In addition, when considering a Rule 12(b)(2) motion to dismiss, a court must construe the pleadings and any supporting materials in the light most favorable to plaintiff.  *See Alcon Labs., Inc. v. Allied Vision Grp., Inc.*, 2018 U.S. Dist. LEXIS 219632, at *7 (E.D.N.Y. Dec. 22, 2018) (*citing Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013)).

IV.    **ARGUMENT**

In its Motion to Dismiss, Defendant raises two arguments: (i) that "[t]his Court lacks subject matter jurisdiction because Plaintiff fails to allege a constitutional basis for standing" (Def. Mem. at p. 4); and (ii) that "Defendant is not subject to personal jurisdiction in New York" (Def. Mem. at p. 10). Both arguments will be addressed in turn.

A.    **BECAUSE PLAINTIFF HAS ALLEGED A CONSTITUTIONAL BASIS FOR THE REQUISITE STANDING, THE COURT DOES NOT LACK SUBJECT MATTER JURISDICTION**

i.    The Amended Complaint Sufficiently Alleges That Plaintiff Suffered a Concrete Injury.

Defendant first argues that Plaintiff fails to plausibly allege standing. Def. Mem. at p. 5. However, the allegations in the Amended Complaint clearly satisfy the necessary burden of demonstrating standing.

From a procedural perspective: "To satisfy the 'irreducible constitutional minimum' of standing. . . . [a]t the pleading stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice." *John v. Whole Foods Mkt. Group, Inc.*, 858 F3d 732, 736 (2d Cir 2017) (*quoting Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)); *see also Thompson v. Equifax Info. Servs. LLC*, 2022 US Dist. LEXIS 32935, at *13-14 (E.D.N.Y. Feb. 24, 2022) ("[H]ere, we are at the pleading stage where general factual allegations of injury are sufficient to plead standing"). Further, when considering a Rule 12(b)(1) motion to dismiss, a court must "accept all factual allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Gertskis v. EEOC*, 594 F. App'x 719, 721 (2d Cir. 2014). Further, "[t]o satisfy standing in ADA website cases specifically, courts in this district have required the plaintiff to allege certain facts in detail, including when they attempted to access to the website, what they were attempting to do on the

website, the specific barriers that prevented them from gaining access, and how they intend to utilize the website in the future." *Loadholt v. ShirtSpace*, 2023 U.S. Dist. LEXIS 36924, at *5-6 (S.D.N.Y. Mar. 6, 2023) (*citing Angeles v. Grace Prods. Inc*., No. 20-CV-10167 (AJN), 2021 U.S. Dist. LEXIS 182317, 2021 WL 4340427, at *2 (S.D.N.Y. Sept. 23, 2021) (collecting cases).

The *Loadholt v. ShirtSpace* decision is particularly instructive. The court in the *Loadholt* case found that the plaintiff met the necessary burden and therefore denied the defendant's Rule 12(b)(1) motion to dismiss:

> The Court finds that [p]laintiff has satisfied his burden of demonstrating standing. . . .Here, Plaintiff alleges that he tried to access the website in order to buy a T-shirt[,] claims that he was unable to navigate the website and describes in detail the accessibility barriers that prevented him from doing so[,] [and] also alleges what days he tried to access the website: March 24 and June 16, 2022. . . Additionally, Plaintiff alleges that he intends to revisit the website in the future and alleges that Defendant has not remedied the accessibility issues on the website.

*Loadholt v. ShirtSpace*, 2023 U.S. Dist. LEXIS 36924, at *5-6.

In this case, Plaintiff alleges that he tried to access the Website in order to buy a specific product (*i.e.,* the Intended Wallet) (*see, e.g.,* Amended Complaint at ¶ 10), and did so multiple times, first on August 30, 2023, then again August 31, 2023, and most recently on December 19, 2023, but was unable to do so independently because of the many access barriers on Defendant's Website (Amended Complaint at ¶ 36). The Amended Complaint explicitly delineates the numerous access barriers that Plaintiff encountered on the Website with accompanying images. Amended Complaint at ¶ 32(a)-(o). The Amended Complaint clearly alleges that, because of Plaintiff's particularized interest in the Intended Wallet, Plaintiff intends to visit the Website again to buy the Intended Wallet immediately upon Defendant's correction of the numerous accessibility barriers on the Website, which still exist. Amended Complaint at ¶ 37.  However, as alleged, as

long as the Access Barriers exist on the Website, Plaintiff is continuously being injured as a result of Defendant's failure to make the Website accessible. Amended Complaint at ¶ 37.

These allegations clearly meet Plaintiff's burden, especially at this stage of the litigation. *See e.g., Loadholt v. ShirtSpace*, 2023 U.S. Dist. LEXIS 36924, at *5-6 ("[t]he allegations, read in totality, sufficiently demonstrate [p]laintiff's intent to return to [d]efendant's website. Plaintiff already returned once to the website on June 16, 2022 to try to complete his T-shirt purchase. Plaintiff alleges that he 'would still like to return to the [w]ebsite to browse and potentially purchase several T-shirts once it is made accessible to him, and intends to do so once the site is made accessible….' This is sufficient to evince Plaintiff's intent to return to the website for the standing analysis") (*citing Camacho v. Vanderbilt Univ.*, 2019 U.S. Dist. LEXIS 209202, 2019 WL 6528974, at *10 (S.D.N.Y. Dec. 4, 2019); *see also Sanchez v. NutCo, Inc.*, 2022 U.S. Dist. LEXIS 51247, at *6-7 (S.D.N.Y. Mar. 22, 2022) (finding that the plaintiff alleged facts that allow a reasonable inference that he intended to return to the subject website, where the complaint alleged that (i) the plaintiff unsuccessfully tried to navigate the subject website; (ii) the subject website's barriers deterred the plaintiff from visiting the website in the future; and (iii) the plaintiff intended to visit the site again in the future when the barriers are cured). Accordingly, the Amended Complaint more than sufficiently alleges the Plaintiff suffered an injury-in-fact, and Defendant's arguments to the contrary fail.

Defendant relies heavily on the Second Circuit's decision *Calcano v. Swarovski N. America Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022) ("*Calcano*"). However, Defendant fails to account for the clear distinctions between this case and *Calcano*.

While Defendant is correct that the court in *Calcano* found that the subject allegations did

not plausibly establish that the plaintiffs intended to return to the subject locations, Defendant does not fully set forth the issues that defeated the subject allegations. For example, the Second Circuit in *Calcano* noted that one of the plaintiffs "alleges that he 'resides on W. 23rd Street, New York, NY, on the same street and less than a block from the Kohl's retail store at 271 W. 23rd St, New York, NY.' But there is no Kohl's store anywhere in Manhattan, let alone at that address. [This plaintiff] thus lacks standing." *Calcano*, 36 F.4th at 76. The *Calcano* opinion is replete with such issues, which render the allegations at issue in that case as implausible.

In fact, while Defendant chooses to harp on particularly snappy turn of phrase in the *Calcano* opinion—that the court noted the plaintiffs' "Mad-Libs-style complaints" (*see* Def. Mem. at pg. 9) —Defendant fails to account for what made the *Calcano* court reach such a finding:

> This backdrop of [the plaintiffs']' Mad-Libs-style complaints further confirms the implausibility of their claims of injury. As noted above, Murphy asserts that he would return to a Kohl's that doesn't exist. Dominguez seeks to go back to Banana Republic for its food. Thorne doesn't even allege where he lives, making an assessment of proximity to a Jersey Mike's impossible. Calcano plans to travel from somewhere in the Bronx to Columbus Circle for a shaving supply gift card. And all of these plans depend on the availability of braille gift cards even though [the] [p]laintiffs never explain why they want those cards in the first place. Although we might excuse a stray technical error or even credit an odd allegation standing alone as an idiosyncratic preference—to do so here in light of the cumulative implausibility of [the] [p]laintiffs' allegations would be burying our heads in the sand. Judicial experience and common sense suggest that the errors, oddities, and omissions in the complaints are a result of their mass production, and they render each [p]laintiff's cookie-cutter assertion of standing implausible.

*Calcano*, 36 F.4th at 77.

Here, there are no "errors, oddities, and omissions" in the Amended Complaint to suggest implausibility, as demonstrated by Defendant's line of argument. Indeed, while Defendant takes issue with facts such as how Plaintiff did not "plausibly allege his *sudden need or want* for a leather wallet" (Def. Mem. at pg. 8, *emphasis added*) or Plaintiff's failure to explicitly allege in depth how

Defendant's price point meets Plaintiff's needs (*id.*), these points fall significantly short of the "errors, oddities, and omissions" that turned the Second Circuit's opinion in *Calcano*. Indeed, all that is necessary to establish a concrete injury are allegations that access barriers make Plaintiff's experience on the Website more difficult or burdensome. *See, e.g., Davis v. Wild Friends Foods, Inc.,* 2023 U.S. Dist. LEXIS 115542, *13-14 (S.D.N.Y. July 5, 2023) ("Courts have thus found that, even where the physical or other barriers in question have not entirely prevented disabled plaintiffs from visiting or receiving services offered at a public accommodation, such that the plaintiffs can continue to visit the facility even with those barriers in place, the plaintiffs still have standing to sue under the ADA, when the barriers render their use of the facility more difficult, burdensome, or dangerous than it would be for individuals who are not disabled") (*citing Access 4 All, Inc. v. G & T Consulting Co., LLC*, 2008 U.S. Dist. LEXIS 30594, 2008 WL 851918, at *4 (S.D.N.Y. Mar. 28, 2008).

Indeed, Defendant's arguments, such as how "Plaintiff visited Defendant's website only twice in the days leading up to the filing of this lawsuit and only once two months after filing this lawsuit, [which] calls into question the plausibility of his intent to return" (Def. Mem. at pg. 8), have been sufficiently disposed of by applicable caselaw. *See, e.g., Chalas v. Barlean's Organic Oils, LLC*, 2022 U.S. Dist. LEXIS 211816, at *8-9 (S.D.N.Y. Nov. 22, 2022) (distinguishing the allegations from those at issue in *Calcano*, finding that the plaintiff has pled sufficient facts to establish standing, and denying the defendant's motion to dismiss pursuant to 12(b)(1), despite the plaintiff only alleging to have visited the defendant's website on the three dates on which she encountered access barriers that prevented her from completing a transaction). Defendant conveniently ignores this case and similar cases for obvious reasons.

11

Similarly, Defendant attempts to demonstrate how "the broader context undermines the plausibility of Plaintiff's claimed injuries" (Def. Mem. at pg. 8), pointing to other cases filed by Plaintiff's counsel, including cases filed on behalf of Plaintiff, in an attempt to discolor Plaintiff's standing to raise this action. *See, e.g.,* Def. Mem. at pgs. 8-10. However, Defendant's attempt to use the number of cases filed by both Plaintiff's counsel and Plaintiff as demonstrative as a lack of standing should be disregarded by this Court, for several reasons.

First, Defendant's argument fails to account for the numerous cases post-*Calcano* in which courts have denied arguments set forth by defendants attempting to use the frequency of the plaintiff's filing of ADA cases. *See, e.g., Davis v. Wild Friends Foods, Inc.*, 2023 U.S. Dist. LEXIS 115542 (S.D.N.Y. July 5, 2023) (*supra*); *see also Lin Kwok Keung v Patisseries Saines Corp*., 2023 US Dist. LEXIS 120258, at *16 (S.D.N.Y. July 12, 2023) (finding "[r]egardless of whether other parts of the [c]omplaints in this case are 'cookie cutter' when compared to prior filings by [the plaintiff], the allegations, which identify particular areas of the bakery that allegedly are not ADA-compliant with citations to the relevant regulations, are sufficient to plausibly allege violations of the ADA" and noting "the contours of ADA-standing in this Circuit post-*Calcano*, which was decided just over one year ago, are still being developed"); *Guerrero v Ogawa USA Inc*., 2023 U.S. Dist. LEXIS 109579, at *8-9 (S.D.N.Y. June 26, 2023) ("Filing serial, formulaic complaints may, in practice, sometimes mean the final product does not contain sufficient non-conclusory allegations to survive a motion to dismiss. But that fact does not entitle [p]laintiff to a weaker presumption that the non-conclusory allegations in the FAC are true") (*citing Delacruz v. Ruby Tuesday, Inc*., 2020 U.S. Dist. LEXIS 163969, 2020 WL 5440576, at *3 (S.D.N.Y. Sept. 8, 2020)); *Adams v. 46 N LLC*, 2023 U.S. Dist. LEXIS 29696, at *12 (SDNY Feb. 22, 2023) ("Affording undue weight to

[p]laintiff's past litigation tactics for pursuing ADA claims would run counter to the 'remedial purpose' of the ADA to 'eliminate discrimination against disabled individuals'") (*citing Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 189 (2d Cir. 2013)).

Moreover, Defendant's argument ignores the increasingly ubiquitous nature of the internet and online shopping in the average consumer's daily life,[2] the convenience it brings (especially to those that are visually impaired), and the injury that would be experienced if, again and again, one's ability to benefit from such convenience was cut short due to access barriers. If anything, Plaintiff's "serial" litigation history is evidence of the systemic disregard for visually impaired consumers that, unfortunately, is widespread throughout the internet and e-commerce platforms. As stated quite succinctly by Judge Lewis J. Liman in the recent case *Davis v. Wild Friends Foods, Inc.*:

> In its motion to dismiss for lack of standing, Defendant argues that "Plaintiff is a professional litigant who sues website owners that caused him no actual harm" and "[i]n his capacity as a tester, Plaintiff has filed over fifty nearly identical complaints in which he makes identical allegations about how he supposedly attempted to patronize websites but was denied access." Defendant contends that, given this litigation history, Plaintiff's allegations that he intended to purchase goods on the Website should not be credited and accordingly Plaintiff has not plausibly alleged an injury in fact. . . . Because a plaintiff's tester status does not preclude standing under the ADA, the fact that the Plaintiff in this case may be an ADA tester is not dispositive. Neither is the fact that Plaintiff may have, as Defendant claims, filed fifty nearly identical complaints. ***The fact that Plaintiff has filed nearly fifty complaints may just as well reflect the rampant nature of discrimination that persons with visual impairments face when using the internet. It is also not surprising, in light of the ubiquitous role that the internet plays in people's lives, that Plaintiff may have***

---

[2] For example, according to the Census Bureau of the U.S. Department of Commerce, the estimate of U.S. retail e-commerce sales for the second quarter of 2023 (adjusted for seasonal variation, but not for price changes) was $277.6 billion, an increase of 2.1 percent (±0.9%) from the first quarter of 2023, while E-commerce sales in the second quarter of 2023 accounted for 15.4 percent of total sales. *See* https://www.census.gov/retail/mrts/www/data/pdf/ec_current.pdf (last visited September 12, 2023). The Court can take judicial notice of government statistics. Victoria Cruises, Inc. v. Yangtze Cruises, Inc. (E.D.N.Y. 2008) 630 F.Supp.2d 255, 263, fn. 3 (*citing United States v. Esquivel*, 88 F.3d 722, 726-27 (9th Cir. 1996) (taking judicial notice of census data compiled by the United States Department of Commerce); *City Bank Farmers' Trust Co. v. United States*, 5 F. Supp. 871, 873 (S.D.N.Y. 1934) (taking judicial notice of statistics published by Commerce Department); Fed. R. Evid. 201).

> ***intended to visit and to use over fifty websites. This fact alone therefore does not make Plaintiff's allegations of standing any more or less plausible.*** *See Chavez v. L2 Liu*, 2021 U.S. Dist. LEXIS 37700, 2021 WL 1146561, at *3 (E.D.N.Y. Feb. 26, 2021) (concluding that plaintiff established standing despite the fact that the case was "one of the twelve nearly identical cases plaintiff has filed in the Eastern District of New York"); *Camacho v. Vanderbilt Univ.*, 2019 U.S. Dist. LEXIS 209202, 2019 WL 6528974, at *29 (S.D.N.Y. Dec. 4, 2019) (denying motion to dismiss for lack of standing even "accept[ing] [d]efendant's representation that Plaintiff filed 50 other complaints containing similar, if not identical, allegations against other institutions of higher learning").

2023 U.S. Dist. LEXIS 115542, at *8-11 (SDNY July 5, 2023) [No. 22-cv-04244 (LJL)] (emphasis added).

Plaintiff, as a visually impaired consumer, was afforded certain rights under the ADA. Those rights were violated by Defendant, as they were a number of times in the past by other corporate entities that failed to ensure compliance with the ADA. Plaintiff's attempts at enforcing those rights in the past should not harm Plaintiff's standing to do so here. Indeed, it is for this very reason that Congress first enacted the ADA: to afford *continuing* protection of people with disabilities. Accordingly, "Courts must tread carefully before construing a Disability Act plaintiff's history of litigation against him. As we have noted more than once, '[f]or the [Disabilities Act] to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the [Disabilities Act]…' We must therefore be 'particularly cautious' regarding 'credibility determinations that rely on a plaintiff's past [Disabilities Act] litigation.'" *Antoninetti v Chipotle Mexican Grill, Inc.*, 643 F3d 1165, 1175 (9th Cir 2010) (*citing D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2008)).

In sum, Defendant seeks to demonstrate that Plaintiff's allegations do not meet the necessary standard to demonstrate injury-in-fact, and that Plaintiff's litigation history renders the

allegations as implausible. As demonstrated above, however, ample caselaw supports the sufficiency of pleadings in this case for purposes of subject matter jurisdiction, and the context of Plaintiff's litigation history only "[r]eflect the rampant nature of discrimination that persons with visual impairments face when using the internet." *Davis v. Wild Friends Foods, Inc*., 2023 U.S. Dist. LEXIS 115542, at *11. At the very least, Plaintiff's litigation history "does not entitle Plaintiff to a weaker presumption that the non-conclusory allegations in the [Amended Complaint] are true." *Guerrero*, 2023 U.S. Dist. LEXIS 109579, at *8-9. Accordingly, the Amended Complaint sufficiently alleges the necessary basis for standing, and this Court should disregard Defendant's arguments otherwise.

### B.   THIS COURT HAS THE REQUISITE PERSONAL JURISDICTION OVER DEFENDANT

Seeking dismissal of the Complaint under Rule 12(b)(2), Defendant argues that it is not subject to the personal jurisdiction of this Court. In sum, Defendant argues that "[b]ased on Plaintiff's allegations, Defendant was not physically present in the forum State, did not advertise in the forum State, and did not plausibly transact business in the forum State [thus, Defendant] did nothing in New York to give rise to Plaintiff's cause of action." Def. Mem. at pg. 15. As will be demonstrated, Defendant is incorrect.

i.   Defendant "Transacts Business" with New York Residents

Pursuant to New York's long arm statute, a court may exercise specific personal jurisdiction over a "non-domiciliary who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." *See* N.Y.C.P.L.R. § 302(a)(1). "A defendant need not be physically present in New York to 'transact business'; rather, a defendant may satisfy the business transaction requirement if it 'purposefully avails itself of the privilege of

conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Mattel, Inc. v. www.fisher-price.online*, 2022 U.S. Dist. LEXIS 127132, at *8 (S.D.N.Y. July 18, 2022) (*quoting Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246-47 (2d Cir. 2007). "The rise of online commercial transactions requires that the doctrine of personal jurisdiction adapt and evolve with modern technological advances." *Id.* Under this evolving lens of the doctrine of personal jurisdiction, "[w]hether a website can be defined as a defendant's transaction of business in New York depends first on its degree of interactivity. If a website allows for the purchase and exchange of goods, it is considered interactive, and thus may confer personal jurisdiction." *Loadholt v. Herb and Arts Intergalactic, Inc.*, 2023 U.S. Dist. LEXIS 59116, at *7 (S.D.N.Y. Apr. 4, 2023); *see also Guglielmo v. JEGS Auto., Inc*., 2021 U.S. Dist. LEXIS 50347, at *7-8 (S.D.N.Y. Mar. 17, 2021).

Likewise, a determination of whether Defendant "transacts business" in New York does not require Plaintiff to have completed a purchase on the Website, as it is Defendant's contacts and activities that establish whether it "transacts business" in New York, and not the activities of Plaintiff. *See, e.g., Mattel, Inc.*, 2022 U.S. Dist. LEXIS 127132. at *9. Indeed, even "[a] reasonable probability that the Website has been actually used to effect commercial transactions with customers in New York" satisfies a showing of purposeful availment of the forum state. *See Loadholt*, 2023 U.S. Dist. LEXIS 59116, at *8. It is for these reasons that "the cases make clear that *any* website offering goods for sale to a New York consumer confers personal jurisdiction under § 302(a)(1)." *Id.* at *11 (emphasis in original) (*citing Quezada v. U.S. Wings, Inc*., 2021 U.S. Dist. LEXIS 234057, at *18 (S.D.N.Y. Dec. 7, 2021)).

Here, it is undeniable that Defendant's website is fully interactive, allowing for customers

both inside and outside the State of New York to complete online purchases and to receive delivery of the purchased goods at their location. This alone is sufficient to establish personal jurisdiction under the New York long-arm statute. "When considering whether to exercise personal jurisdiction over a defendant because of his or her activities via a website, the Second Circuit directs district courts to look to the degree of interactivity and commercial nature of the site. Fully interactive websites, over which a seller knowingly transmits goods or services to users, are sufficient to confer personal jurisdiction pursuant to New York's long-arm statute." *Romero v. 88 Acres Foods, Inc*., 580 F. Supp. 3d 9, *15 (S.D.N.Y. 2022) (citations omitted).

Further, Defendant cites to multiple allegations contained in the Amended Complaint that clearly allege that Defendant conducts business in New York State, but then argues that Plaintiff fails to provide "[a]ny factual support for these naked assertions." Def. Mem. at pg. 12. However, it is telling that <u>nowhere</u> in its Motion to Dismiss or supporting documents does Defendant explicitly assert that it has <u>never</u> done business in New York, and thus, nowhere does Defendant refute the allegation that it has conducted business in New York State. This is because Defendant cannot do so, as it <u>has</u> conducted business with residents of New York in the past. While Plaintiff cannot attest to how many of those customers completed a purchase online at this stage in the litigation, Defendant's admission is sufficient to meet the necessary standard under N.Y.C.P.L.R. § 302(a)(1), which extends to a defendant who transacts "***any*** business within the state or contracts anywhere to supply goods or services in the state."

As to the assertion Defendant's assertion that Defendant "did not advertise in the forum State," this, too, does not relieve Defendant of personal jurisdiction. *See Loadholt,* 2023 U.S. Dist. Lexis 59116, at *12 (finding that the defendant's declaration "that it does not solicit customers or

advertise in New York . . . is not enough to immunize it from this state's jurisdiction when its products are readily available for sale to New York customers") (*quoting Quezada*, 2021 U.S. Dist. LEXIS 234057, 2021 WL 5827437, at *7). Regardless, Plaintiff contends that Defendant does indeed direct its advertisements to consumers in New York, as Defendant's Website is listed as the *seventh* website result when searching for "men's leather front pocket wallet" on Google, even when the computer on which the search is being performed is connected to a server located in New York. *See* Khaimov Declaration at ¶ 2.[3] With the thousands of vendors that deal in leather goods located all over the United States, the fact that Defendant's Website is only the seventh Google search result indicates that Defendant does indeed direct its advertising to the State of New York.

    ii.    Plaintiff's Claim Arises from Defendant's Transaction of Business in New York

 Next, it is clear that Plaintiff's claims arise from Defendant's transaction of business in New York. "[A] court deciding a 12(b)(2) motion to dismiss is to consider whether the subject cause of action 'arises from a business transaction when there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York.' *Romero*, 580 F. Supp. 3d 9 at *16. "Where a visually impaired plaintiff alleges that he or she visited a defendant's website but was denied access otherwise afforded to sighted individuals because of alleged access barriers, the alleged discriminatory conduct forms the basis of the plaintiff's claims, which, in turn, renders the defendant's website transactions to have a substantial relationship with the claims asserted." *Id*. "Such allegations are sufficient to establish that the defendant has purposefully

---

[3] When considering a motion to dismiss for lack of personal jurisdiction, "the Court may consider extrinsic evidence such as affidavits and other supporting materials." *Overseas Ventures, LLC v. Row Mgmt., Ltd*., 2012 U.S. Dist. LEXIS 159097, at *2 n.1 (S.D.N.Y. Oct. 26, 2012) (*citing See Penachio v. Benedict*, 461 F. App'x 4, 5 (2d Cir. 2012)).

availed itself of a New York forum, and, in such cases, the court may exercise personal jurisdiction pursuant to section 302(a)(1) of the New York long-arm statute." *Id*.

Here, the Amended Complaint alleges that Plaintiff, who is visually impaired, visited Defendant's Website but was denied access otherwise afforded to sighted individuals because of the Access Barriers. Thus, the alleged discriminatory conduct forms the basis of Plaintiff's claims, which, in turn, renders Defendant's Website transactions to have a substantial relationship with the claims asserted. The Court may exercise personal jurisdiction pursuant to section 302(a)(1) of the New York long-arm statute.

  iii. <u>Personal Jurisdiction Over Defendant Comports with Due Process</u>

Defendant then argues that "[t]he Court's exerting personal jurisdiction does not comport with principles of Due Process."  Def. Mem. at ¶ 14. This, too, is incorrect. It is well-established that, because CPLR § 302(a)(1) permits the exercise of personal jurisdiction in a narrower range of circumstances than the Due Process Clause itself, an exercise of personal jurisdiction under CPLR 302(a)(1) "necessarily carries with it the further conclusion that the exercise of such jurisdiction comports with constitutional due process." *Mattel, Inc*., 2022 U.S. Dist. LEXIS 127132, at *12 (*collecting cases*); *see also Romero*, 580 F. Supp. 3d 9 at *16 ("[W]here allegations are sufficient to establish the defendant has purposefully availed itself of a New York forum, the exercise of specific personal jurisdiction pursuant to section 302(a)(1) of the New York long-arm statute comports with the Due Process Clause of the United States"); *WowWee Grp. Ltd v. Meirly*, 2019 U.S. Dist. LEXIS 51905, at *11 (S.D.N.Y. Mar. 27, 2019) ("Due process requires certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.  This standard is satisfied without further inquiry by state

long-arm statutes, like Section 302 [*i.e.*, the New York long arm statute], that permit the exercise of jurisdiction in a narrower range of circumstances than the Due Process Clause") (citations omitted); *McGraw-Hill Glob. Educ. Holdings, LLC*, 323 F. Supp. at 495 (S.D.N.Y. 2018) (concluding application of New York's long arm statute is consistent with the limits of due process).

While it may be true that *certain* facts may give rise to a situation where due process would not be met by New York's long-arm statute, this is not one of those cases. *See Loadholt*, 2023 U.S. Dist. LEXIS 59116, at *16 ("Although the provisions of § 302(a)(1) are not identical to the requirements of constitutional due process, 'the Second Circuit has noted that it would be a 'rare' case where personal jurisdiction is proper pursuant to New York's long-arm but not pursuant to a due process analysis. . . this is not that rare case, as other courts in this District recently presented with equivalent contacts to this forum have concluded that the constitutional floor was likewise met") (collecting cases).

    iv.    <u>If the Court Is Not Inclined to Exercise Personal Jurisdiction, It Should Permit Limited Jurisdictional Discovery into Defendant's New York Contacts to Avoid Undue Prejudice</u>

In the event that this Court for some reason does not find sufficient grounds for its exercise of personal jurisdiction over Defendant in this case, Plaintiff respectfully requests leave to conduct limited jurisdictional discovery to establish such grounds, the governing standard of which is "very generous." *See, e.g., Vasquez v. H.K. & Shanghai Banking Corp.*, 2019 U.S. Dist. LEXIS 120622, at *3 (S.D.N.Y. July 19, 2019).

As stated above, Defendant's Motion to Dismiss does not explicitly deny ever having conducted business in New York with New York residents. In addition, while Defendant, whose physical operation is located in Alabama, claims to not direct any advertising to consumers in the

State of New York, Defendant's Website is listed as the *seventh* website result when searching for "men's leather front pocket wallet" on Google, even when the computer on which the search is being performed is connected to a server located in New York. *See* Khaimov Declaration at ¶ 2.

Thus, at the very least, a sufficient showing has been made to allow for jurisdictional discovery before outright dismissal. *See Astor Chocolate Corp. v. Elite Gold Ltd*., 2020 U.S. Dist. LEXIS 78862, at *25 (S.D.N.Y. May 5, 2020) (Finding the plaintiff to have raised issues of jurisdictional fact justifying limited jurisdictional discovery where the defendant's "carefully worded declarations only partially refute [the plaintiff]'s allegations relating to personal jurisdiction"); *see also Ikeda v. J Sisters 57, Inc*., 2015 U.S. Dist. LEXIS 87783, at *24-26 (S.D.N.Y. July 6, 2015) ("It is well settled under Second Circuit law that, even where plaintiff has not made a prima facie showing of personal jurisdiction, a court may still order discovery, in its discretion, when it concludes that the plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual record"); *Golisano v. Turek*, 2015 U.S. Dist. LEXIS 11787, at *11 (W.D.N.Y. Feb. 2, 2015) (*citing Pension Committee of University of Montreal Pension Plan v. Banc of America Securities, LLC*, 2006 U.S. Dist. LEXIS 11617, (S.D.N.Y.2006)) ("Where, as here, 'pertinent facts bearing on the question of jurisdiction are controverted ... or where a more satisfactory showing of the facts is necessary,' jurisdictional discovery should be granted").

Indeed, in the *Guglielmo v. JEGS Auto., Inc*. case (a case upon which Defendant relies), the court found that "[d]istrict courts in this Circuit have allowed jurisdictional discovery where a plaintiff has made less than a prima facie showing but has demonstrated a sufficient start toward establishing personal jurisdiction. [J]urisdictional discovery is not permitted where . . . the defendant submits an affidavit that provides all the necessary facts and answers all the questions

regarding jurisdiction. However, if plaintiff has not pleaded a *prima facie* showing of personal jurisdiction, a court may order limited discovery targeted at the missing jurisdictional elements, if plaintiff has shown that such an exercise would serve to fill any holes in its showing." *Guglielmo*, 2021 U.S. Dist. LEXIS 50347, at *15-16 (internal quotation marks and citations omitted).

The plaintiff in *Guglielmo* cited to information on the defendant's website concerning guidance on New York sales tax and a downloadable New York tax form available on the defendant's website as evidence of the defendant's interactions with New York, which indicated that the defendant was directing its business to New York consumers. *Id*. at *9. The defendant in that case argued that (i) "[a]bsent evidence of an actual order placed through the website from New York, [an] actual sale that occurred in New York, and [a] single actual delivery to New York, the [c]omplaint alleges merely that [d]efendant 'operat[es] a website that may be accessed from New York,' but that fact, without more, does not bring the operator within the jurisdiction of New York courts; and (ii) that "the [c]omplaint relies on conclusory allegations [*i.e.*:] 'Defendant conducts and continues to conduct a substantial and significant amount of business in this District;' and 'Defendant is and was at all relevant times . . . doing business in New York.'" *Id*. at *10-11 (citations omitted).

In considering these arguments, the *Guglielmo* court held the following:

[P]laintiff's failure to establish personal jurisdiction is, to some extent, a function of [d]efendant's own alleged wrongdoing. Taking the allegations of the [c]omplaint as true, it was [d]efendant's violations of the ADA that prevented [p]laintiff from making the purchase from New York that would have established personal jurisdiction. Had [p]laintiff been able to make the purchases from New York he claims to have attempted to make, personal jurisdiction would have been present. The evidence [p]laintiff has been able to present, while not sufficient to establish jurisdiction, does constitute a substantial start in that direction. The evidence that [d]efendant makes substantial sales and the fact that it makes New York state sales tax forms available on its [w]ebsite go far to making it plausible that at least some of those sales are effected through transactions over the [w]ebsite. If, at

the time of the filing of this action, [d]efendant was selling products through its [w]ebsite to New York customers and at the same time displaying the [w]ebsite to [p]laintiff but denying him the access other New York customers had to purchase products, those facts would help to establish personal jurisdiction and create the articulable nexus or substantial relationship between the business transaction and the claim asserted. Defendant's transactions with other New York customers would be connected to the plaintiff's own claim because the transactions with the other persons actually caused some part of the harm to the plaintiff. Specifically, [p]laintiff would be harmed by the defendant's transactions with New York customers because the [c]omplaint alleges that [d]efendant has chosen to purposefully avail itself of the rights and protections of New York by selling products on its [w]ebsite to New York customers, but only to those customers who are not legally blind and can navigate the [w]ebsite. The business transaction (i.e., [d]efendant's sales of products to New York customers) would thus have a substantial relationship with the claim asserted in this action (i.e., [d]efendant makes such sales through a website that is inaccessible to certain customers).

*Id*. at *13-15. Based on this reasoning, the court in *Guglielmo* found the plaintiff to have made the necessary showing to allow for jurisdictional discovery, despite not having established that the defendant had actually conducted any business in New York State. *Id.* at *16.

Here, the same issue exists concerning the allegations related to personal jurisdiction. To the extent that Plaintiff cannot allege a basis for personal jurisdiction any stronger than the allegations alleged in the Amended Complaint, such inability is a result of Defendant's own alleged wrongdoing. The Amended Complaint clearly alleges that Plaintiff intended to make a purchase on Defendant's Website, but Defendant's violations of the ADA prevented Plaintiff from completing a purchase. Even further, while Defendant here argues that the Amended Complaint does not "[a]llege what necessarily drove [Plaintiff] to land on Defendant's website" (Def. Mem. at pg. 8), the Amended Complaint *does indeed* allege what drove Plaintiff to Defendant's Website, alleging that Plaintiff searched for a "men's leather front pocket wallet" on Google and found Defendant's Website. *See* Amended Complaint at ¶ 10.  Again, although Defendant's physical operation is located in Alabama, Defendant's Website is listed as the *seventh* website result when

searching for "men's leather front pocket wallet" on Google, even when the computer on which the search is being performed is connected to a server located in New York. *See* Khaimov Declaration at ¶ 2. Accordingly, grounds exist to allow for limited jurisdictional discovery, at the very least.

### V.    **CONCLUSION**

For the reasons set forth, the Court should respectfully deny Defendant's Motion to Dismiss in its entirety, or, at the minimum, allow Plaintiff leave to conduct minimal jurisdictional discovery.

Dated:    Hicksville, New York
          March 28, 2024

                                    MARS KHAIMOV LAW, PLLC
                                    *Attorneys for Plaintiff*

                                    /s/ Mars Khaimov
                                    By: Mars Khaimov, Esq.
                                    100 Duffy Avenue, Suite 510
                                    Hicksville, New York 11801
                                    Tel (929) 324-0717
                                    Fax (929) 333-7774
                                    Email: mars@khaimovlaw.com